UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

ANGEL SERRANO,

                Plaintiff,

       -against-

ANGEL PALACIOS a/k/a ANGEL
BARRERA a/k/a ANGEL BARRERA
PALACIOS, et al.,

                Defendants.

----------------------------------------------------------X

                                **REPORT AND
RECOMMENDATION**
21-CV-980 (CBA) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Angel Serrano ("Plaintiff") initiated this action on February 23, 2021,

against Defendants Angel Palacios a/k/a Angel Barrera a/k/a Angel Barrera Palacios

("Palacios"), Ira G. Cooper ("Cooper"), Rosendo Rivas ("Rivas"), and APRR

Development Inc. ("APRR"), alleging that Defendants defrauded him out of $200,000 in

connection with a real estate venture. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff

brings a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1961 *et seq.*, as well as state and common law claims for fraud, conversion,

breach of fiduciary duty, unjust enrichment, constructive trust, and violations of New

York General Business Law § 349. (*See id.* ¶¶ 51–125.) Currently pending before this

Court is Plaintiff's motion for default judgment as to Defendant Palacios, which the

Honorable Carol Bagley Amon referred to the undersigned Magistrate Judge. (*See*

Plaintiff's Second Motion for Default Judgment ("Pl.'s Revised Mot."), ECF No. 22; Dec.

3, 2021 ECF Order.) For the reasons set forth below, the Court recommends that

Plaintiff's second motion for default judgment be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motion. As noted, Plaintiff initiated this action on February 23, 2021, after Defendants allegedly defrauded him out of $200,000. (Compl., ECF No. 1, ¶¶ 12–13.) Specifically, Plaintiff alleges that he and Defendant Palacios created ASAPPP, Corp. ("ASAPPP") on March 18, 2019, and that on March 20, 2019, the two executed a contract for ASAPPP to purchase a property in Yonkers, New York (the "Yonkers Property") from Defendants Rivas and APRR. (*Id.* ¶¶ 27–30.) Plaintiff avers that as part of that venture, he gave a $200,000 check to Defendant Cooper on March 23, 2019, believing that Cooper, acting as Defendant Palacios's attorney, would hold the check in escrow. (*Id.* ¶¶ 31–32; *see also* Check Copy, ECF Nos. 1-19 and 15.) However, Plaintiff claims that Rivas and APRR never executed the contract for the sale of the Yonkers Property, and that when Plaintiff attempted to retrieve his money from Defendant Cooper, Cooper informed him that it was no longer in his possession. (Compl., ECF No. 1, ¶¶ 33–35.) Plaintiff later learned that his $200,000 "had been provided to Defendant Rivas pursuant to representations made by Defendant Palacios." (*Id.* ¶ 42.) As a result of these actions, Plaintiff initially advanced the claim that Defendants Palacios, Rivas, and APRR together constituted an enterprise that engaged in racketeering activities in violation of RICO, in addition to six other state and common law claims. (*Id.* ¶¶ 49–125.)[1]

---

[1] The Court notes that in support of his RICO claim, Plaintiff included additional allegations as to Defendants' purported activities as an enterprise. (*See, e.g.*, Compl., ECF No. 1, ¶¶ 15–26, 44–79.) However, as explained below, because Plaintiff has withdrawn his RICO claim as to all Defendants, the Court does not address these allegations. (*See* Declaration in Support of Plaintiff's Revised Motion ("Decl. in Supp."), ECF No. 22, ¶ 25.)

On June 2, 2021, following a pre-motion conference before Judge Amon, Plaintiff voluntarily withdrew his claims against Defendant Cooper. (*See* May 3, 2021 ECF Minute Entry and Order; Notice of Voluntary Dismissal, ECF No. 14.) The Court then held an initial conference on July 28, 2021, at which counsel for Defendants Rivas and APRR appeared. (*See* July 28, 2021 ECF Minute Entry and Order.) During the conference, Plaintiff's counsel indicated that Plaintiff intended to request an entry of default as to Defendant Palacios and to "investigat[e] whether the other defendants should be voluntarily dismissed." (*Id.*)

On August 12, 2021, the Clerk of Court entered a certificate of default as to Defendant Palacios pursuant to Rule 55(a) of the Federal Rules of Civil Procedure due to his failure to appear or otherwise defend this action. (Certificate of Default, ECF No. 20; *see also* Returned Summons, ECF No. 9; Declaration in Support of Plaintiff's Revised Motion ("Decl. in Supp."), ECF No. 22, ¶¶ 3–5.)[2] Plaintiff then moved for default judgment solely as to Defendant Palacios on September 24, 2021. (Plaintiff's Motion for Default Judgment ("Pl.'s First Mot."), ECF No. 21.) On November 12, 2021, the Court held a motion hearing to discuss the potential impact that a default judgment against Defendant Palacios may have on the non-defaulting Defendants, Rivas and APRR. (*See* Nov. 12, 2021 ECF Minute Entry and Order; *see also* Oct. 25, 2021 Scheduling Order (citing *Lemache v. Tunnel Taxi Mgmt., LLC*, 354 F. Supp. 3d 149, 152–56 (E.D.N.Y. 2019)).)

Thereafter, Plaintiff filed a second motion for default judgment on December 3, 2021, representing that upon further investigation, Defendants Rivas and APRR were not co-conspirators in an alleged RICO enterprise, but rather, Defendant Palacios's victims.

---

[2] Because Plaintiff's second motion for default judgment and supporting documents were filed as one PDF document, the Court's references to the declaration begin on page three.

(Pl.'s Revised Mot., ECF No. 22; Decl. in Supp., ECF No. 22, ¶ 7 ("[I]t has become clear that Rivas and APRR[] are actually victims of Palacios and not co-conspirators involved in a criminal enterprise."); *see also id.* ¶¶ 23–24.) Thus, "[r]ather than risk[ing] prejudicing these victim-defendants," Plaintiff withdrew the first motion for default judgment, as well as his RICO claim and all claims as to Defendants Rivas and APRR. (Decl. in Supp., ECF No. 22, ¶¶ 8, 25, 37.)[3]

Notwithstanding Plaintiff's withdrawal of the only federal claim asserted in this action, Plaintiff requests that the Court exercise supplemental jurisdiction over the remaining state and common law claims against Defendant Palacios and grant Plaintiff's second motion for default judgment. (*See id.* ¶¶ 22–37 (contending, *inter alia*, that "[e]ven in the absence of the RICO claims, this Court is in the best position to resolve this matter and should maintain supplemental jurisdiction over the state law claims").) Further, Plaintiff seeks a judgment awarding damages in the amount of $225,719.30: $200,000 for his lost funds and $25,719.30 in attorneys' fees and costs, as well as post-judgment interest at the statutory rate. (*See id.* ¶¶ 10, 12–13, 19–20; Plaintiff's Proposed Default Judgment ("Pl.'s Proposed Default J."), ECF No. 22-1.)

For the reasons contained herein, the Court respectfully recommends exercising supplemental jurisdiction over Plaintiff's remaining claims and granting Plaintiff's second motion for default judgment, in part.

---

[3] On December 7, 2021, this Court issued a report and recommendation recommending that Plaintiff's first motion be denied as moot, which Judge Amon adopted on December 28, 2021. (*See* Dec. 7, 2021 ECF Report and Recommendation; Dec. 28, 2021 ECF Order Adopting Report and Recommendation.)

4

## DISCUSSION

### I.    Legal Standard for Default Judgment

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, the district court may, on a plaintiff's application, enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). However, a plaintiff "is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is left to the discretion of the district court. *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012).

As an initial matter, the plaintiff must demonstrate proper service of the summons and complaint and compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2.[4] *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013).

---

[4] Having carefully reviewed all the filings in this case, the Court finds that Plaintiff served Defendant Palacios by delivering copies of the summons and complaint on a person of suitable age and discretion at his apparent dwelling, and then mailing copies to the same address. (*See* Returned Summons, ECF No. 9.) In addition, as part of Plaintiff's request for a certificate of default, Plaintiff filed an affidavit demonstrating that Defendant failed to defend in the action and that the pleadings were properly served, satisfying Local Civil Rules 55.1(a) and 55.1(b)(2)– (3). (*See* Request for Certificate of Default, ECF No. 19.) The Court notes that while Plaintiff's affidavit was silent as to whether Defendant Palacios is an infant, in the military, or an incompetent person, the certificate of service for the summons and complaint establishes that Defendant Palacios does not fall into one of these categories, which is sufficient to satisfy Local Rule 55.1(b)(1). (*See* Returned Summons, ECF No. 9.) *See also Juan v. Son of Polisi, Inc.*, 19-CV-4662 (LDH) (PK), 2021 WL 2179344, at *4 (E.D.N.Y. Jan. 24, 2021). Finally, Plaintiff certified the mailing of the default motion papers to Defendant's last known residence, in accordance with Local Rule 55.2(c). (*See* Pl.'s Revised Mot., ECF No. 22, at 2 (certifying mail service of Plaintiff's motion to Defendant Palacios's residence).)

The court must then determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."). In making this determination, courts accept a plaintiff's "factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84; *see also Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021).

While a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

## II.    Analysis

### A.  Entry of Default

In determining whether a defendant's conduct warrants granting a motion for default judgment, courts evaluate "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of a motion for default judgment." *Cappone v. Morrissey*, No. 16-CV-7170 (RRM) (SJB), 2018 WL

6

4055280, at *5 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, No. 16-CV-7170 (RRM) (SJB), 2018 WL 4054871 (E.D.N.Y. Aug. 24, 2018).

Addressing the first factor here, the Court finds that Defendant Palacios's failure to respond or otherwise appear in this action supports a finding that his default is willful. *See id.* at *6; *see also S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998). Defendant Palacios was given sufficient notice of the present litigation and failed to answer by the deadline of May 12, 2021. (*See* Returned Summons, ECF No. 9.) Further, pursuant to Local Civil Rule 55.2(c), a copy of the Notice of Motion for Default Judgment and all supporting papers were served on Defendant Palacios at his place of residence. (Pl.'s Revised Mot., ECF No. 22, at 2.) Despite this notice and service, Defendant Palacios did not respond to the complaint, did not appear, and did not in any away attempt to defend against Plaintiff's suit, "indicat[ing] a clear pattern of willful and deliberate disregard for the litigation." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

As to the second factor, given Defendant Palacios's absence, there is no suggestion in the record that he has a meritorious defense to Plaintiff's claims. *See Off-White LLC v. Beijing Yinyu Trading Co.*, No. 20-CV-7894 (LTS), 2022 WL 846833, at *3 (S.D.N.Y. Mar. 22, 2022); *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK) (SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022), *report and recommendation adopted*, No. 20-CV-3474 (EK) (SJB), 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022). Additionally, the third factor also favors the entry of default, as Plaintiff would be prejudiced if default judgment was denied, given that there are no additional remedies readily available for Plaintiff in this case with respect to Defendant Palacios. *See Off-White LLC*, 2022 WL 846833, at *3.

Given that all three factors support Plaintiff's motion, the Court recommends finding that an entry of default is warranted.

**B. Liability**

As noted above, finding a defendant to be in default does not automatically entitle a plaintiff to an award of judgment. *See Finkel*, 970 F. Supp. 2d at 118. The Court must still determine whether the "unanswered allegations suffice to state a claim." *Bronx Gate & Grill v. Deleon*, No. 07-CV-4411 (RJD) (JO), 2008 WL 5069533, at *2 (E.D.N.Y. Nov. 24, 2008) (citing *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). In this case, however, the Court need not analyze the sufficiency of Plaintiff's RICO claim or state law claims as to Defendants Rivas and APRR, as those claims have been withdrawn. (*See* Decl. in Supp., ECF No. 22, ¶¶ 7, 22–25, 37.) With respect to Plaintiff's remaining non-federal claims against Defendant Palacios, the Court first addresses the threshold question of whether it is appropriate to exercise supplemental jurisdiction. *See Cappone*, 2018 WL 4055280, at *11; *Bronx Gate & Grille*, 2008 WL 5069533, at *5. Because the Court recommends answering this question in the affirmative, the Court also evaluates the sufficiency of Plaintiff's allegations regarding fraud, conversion, breach of fiduciary duty, unjust enrichment, constructive trust, and violations of New York General Business Law § 349.

1. Plaintiff's Withdrawal of RICO Claim and Claims Against Rivas and APRR

Plaintiff's second motion for default judgment unequivocally asks the Court to withdraw his RICO claim in its entirety, as well as all claims against Defendants Rivas and APRR. (*See* Decl. in Supp., ECF No. 22, ¶ 37 ("[I]t is respectfully requested that this Court accept a withdrawal of the RICO claims against all defendants (without prejudice) [and] a withdrawal of all claims against Defendants Rivas and APRR [] (without prejudice)[.]"); *see also id.* ¶¶ 7, 24–25.) The Court recommends construing counsel's

8

declaration as a motion to withdraw Plaintiff's RICO claim against Defendants Palacios, Rivas, and APRR, as well as all claims against Rivas and APRR. *See Cinevert v. Varsity Bus Co.,* No. 12-CV-1223 (RRM) (VVP), 2014 WL 4699674, at *2 (E.D.N.Y. Sept. 22, 2014) (interpreting the plaintiff's repeated and unequivocal assertions that he will not advance claims as withdrawing such claims); *see also Palacios v. City of New York*, No. 15-CV-386 (PAE), 2017 WL 4011349, at *6 n.11 (S.D.N.Y. Sept. 11, 2017).

Accordingly, per Plaintiff's request, the Court recommends dismissing Plaintiff's RICO claim and remaining state and common law claims as to Defendants Rivas and APRR, without prejudice.

2.  Plaintiff's Remaining State Law Claims Against Palacios

Following Plaintiff's withdrawal of his RICO claim, no claims remain over which the Court has original jurisdiction.[5] Therefore, the Court first addresses whether it is appropriate to exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

i.  Supplemental Jurisdiction

a.  *Applicable Law*

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The decision whether to retain supplemental jurisdiction is "discretionary." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 263 (2d Cir. 2006). In determining whether to exercise supplemental jurisdiction, courts often weigh the following factors: (1) judicial

---

[5] The Court notes that both Plaintiff and Defendant Palacios reside in New York, and accordingly, there is no diversity of citizenship alleged. (*See* Compl., ECF No. 1, ¶¶ 5–6.)

economy, (2) convenience, (3) fairness, and (4) comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("When, as in this case, a federal court dismisses all claims over which it had original jurisdiction, it must reassess its jurisdiction over the case by considering several related factors — judicial economy, convenience, fairness, and comity."); *Cappone*, 2018 WL 4055280, at *11 (same). When the litigation remains in an early stage, and "there are no significant judicial economy or fairness considerations weighing in favor of jurisdiction," courts generally decline to exercise supplemental jurisdiction. *Foster v. 2001 Real Estate*, No. 14-CV-9434 (RWS), 2015 WL 7587360, at *6 (S.D.N.Y. Nov. 24, 2015); *see also, e.g.*, *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 236 (E.D.N.Y. 2014); *Cappone*, 2018 WL 4055280, at *11; *Bronx Gate & Grille*, 2008 WL 5069533, at *5.

In certain circumstances, however, courts do retain supplemental jurisdiction after all federal claims have been dismissed. For example, when they have already performed extensive work on the case, when it would be highly burdensome to the plaintiff to proceed in state court, in the interests of fairness, or simply as a matter of discretion. *See, e.g.*, *Choi v. 37 Parsons Realty L.L.C.*, 444 F. Supp. 3d 411, 425 (E.D.N.Y. 2020) (retaining supplemental jurisdiction where it made "more sense for the Court to maintain jurisdiction as the facts relevant to the state claims largely overlap with those undergirding the rest of the case"); *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18-CV-1047 (PGG), 2020 WL 3488037, at *3 (S.D.N.Y. June 26, 2020) (retaining jurisdiction where the case had "a long and tortured history that w[ould] only be unreasonably prolonged by a refusal to exercise supplemental jurisdiction"); *New York Transp., Inc. v. Naples Transp., Inc.*, 116 F. Supp. 2d 382, 390 (E.D.N.Y. 2000) (retaining jurisdiction where the court invested considerable time and effort into the case and the

burden of re-serving multiple defendants in state court would be considerable for plaintiffs).

b. *Application*

Here, judicial economy, procedural convenience, fairness, and comity weigh in favor of exercising supplemental jurisdiction over Plaintiff's remaining claims. As an initial matter, the Court finds that in the current default posture, considerations of judicial economy and procedural convenience support retaining jurisdiction, particularly in light of Plaintiff's withdrawal of his RICO claim and all non-federal claims other than as to Defendant Palacios. As to the element of fairness, requiring Plaintiff to refile his claims against Defendant Palacios in state court would likely result in further delay and not necessarily a different result. (*See* Compl., ECF No. 1, ¶ 11 (listing state court proceedings involving Defendant Palacios and similar alleged conduct); Decl. in Supp., ECF No. 22, ¶¶ 30–31.)[6] *See also EIG Energy Fund XIV, L.P.*, 2020 WL 3488037, at *4; *New York Transp., Inc.*, 116 F. Supp. 2d at 390. Lastly, Plaintiff's remaining claims do not raise "unsettled issues of state law" that give the Court pause with respect to comity. *EIG Energy Fund XIV, L.P.*, 2020 WL 3488037, at *5.

Accordingly, the Court recommends exercising supplemental jurisdiction over Plaintiff's six remaining state and common law claims against Defendant Palacios, as a matter of discretion and in light of their limited factual scope.

---

[6] Plaintiff alleges that "Defendant Palacios is currently involved in at least 10 separate New York State Supreme Court actions and New York State Civil Court actions." (*See* Compl., ECF No. 1, ¶ 11.) The Court notes that in some of these cases, Defendant Palacios has also failed to appear. For example, in *Ariolfo Leon v. Jose A. Barrera and Angel Barrera Palacios*, Index No. 700334/2018, Defendant Palacios failed to appear as a named defendant, and the Honorable Darrell L. Garvin entered a default judgment against him. *See Leon v. Barrera*, No. 700334/2018, 2018 WL 10670108, at *1 (N.Y. Sup. Ct. Queens Cnty. Oct. 2, 2018).

ii.  Defendant Palacios's Liability for Plaintiff's Remaining Claims

Having concluded that exercising supplemental jurisdiction is appropriate here, the Court next turns to the sufficiency of Plaintiff's unanswered allegations with respect to the six remaining claims in the complaint. For the reasons set forth below, the Court respectfully recommends finding liability as to Plaintiff's claims of fraud and conversion, dismissing Plaintiff's breach of fiduciary duty claim, and denying Plaintiff's requests for relief based on theories of unjust enrichment, constructive trust, and violations of New York General Business Law § 349.

a.  *Fraud*

Plaintiff alleges that Defendant Palacios committed common law fraud. (Compl., ECF No. 1, ¶¶ 80–88.) To assert a claim for common law fraud under New York law, a plaintiff "'must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'" *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 475 (E.D.N.Y. 2021) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015)); *see also Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). In federal court, fraud must also be pled in accordance with the heightened pleading standard described in Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake."). As a result, "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261 (ARR) (RER), 2013 WL 764735, at *4 (E.D.N.Y. Feb. 8, 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)), *report and*

*recommendation adopted*, No. 11-CV-4261 (ARR) (RER), 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).

Here, Plaintiff alleges that in March 2019, Defendant Palacios "intentionally made false material representations to Plaintiff," including "that Plaintiff would need to provide $200,000 to Defendant Palacios to purchase the Yonkers Property." (Compl., ECF No. 1, ¶ 82; *see also id.* ¶¶ 27–35 (describing Plaintiff's failed efforts to purchase the Yonkers Property with Defendant Palacios, through their newly formed corporate entity, ASAPPP).) Specifically, Plaintiff claims that Defendant Palacios knowingly made material misrepresentations regarding the ownership of the Yonkers Property and Plaintiff's ability to "create a business with . . . Palacios to purchase the Yonkers Property[.]" (*Id.* ¶ 82.) Despite knowing the falsity of these representations, Plaintiff avers that Defendant Palacios went to "great lengths" to get Plaintiff to provide the $200,000 for the Yonkers Property, including by creating ASAPPP and "preparing a fraudulent contract." (*Id.* ¶ 84; *see also id.* ¶¶ 42, 62, 71, 88.) Plaintiff alleges that he reasonably relied on Defendant Palacios's misrepresentations when he entered into the partnership agreement to create ASAPPP and provided Defendant Cooper with the $200,000 to buy the Yonkers Property, and that as a result of his reliance, Plaintiff suffered damages of at least $200,000. (*Id.* ¶¶ 83–87.)

Accepting all of Plaintiff's factual allegations as true, and drawing all reasonable inferences in his favor, *see Finkel*, 577 F.3d at 84, the Court respectfully recommends finding that Plaintiff has sufficiently alleged that Defendant Palacios is liable for common law fraud. *See IAV Med. Supply, Inc.*, 2013 WL 764735, at *4–6; *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, 925 F. Supp. 2d 344, 351 (E.D.N.Y. 2013).

b. *Conversion*

Plaintiff also claims that Defendant Palacios committed common law conversion with respect to the $200,000 Plaintiff provided him in order to buy the Yonkers Property. (Compl., ECF No. 1, ¶¶ 89–94.) "Under New York law, conversion is 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 801 (S.D.N.Y. 2017) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)); *see also DeVito v. Neiman*, 548 F. Supp. 3d 314, 317–18 (E.D.N.Y. 2021). "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270 (SJF) (AKT), 2013 WL 1335997, at *9 (E.D.N.Y. Feb. 28, 2013), *report and recommendation adopted*, No. 10-CV-5270 (SJF) (AKT), 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013); *see also Bricklayers Ins. & Welfare Fund v. Inniss Constr., Inc.*, No. 19-CV-7094 (DLI) (LB), 2021 WL 7208994, at *5 (E.D.N.Y. Oct. 5, 2021) ("A person is liable for conversion of money when he fails to meet an obligation to return or otherwise treat in a particular manner the specific money in question.").

Plaintiff alleges that on March 23, 2019, he "provided a bank check number 1928860, from Plaintiff's account, for $200,000.00, made out to Defendant 'Ira G. Cooper, as attorney,' to Defendant Palacios," and that when Plaintiff tried to retrieve said check, "Defendant Cooper explained that the funds had been provided to Defendant Rivas pursuant to representations made by Defendant Palacios." (Compl., ECF No. 1, ¶¶ 31, 42; *see also* Check Copy, ECF Nos. 1-19 and 15.) Plaintiff also claims that Defendants "disappear[ed] with the money," and "without authority, intentionally exercised and continue to exercise control over Plaintiff's property[.]" (Compl., ECF No. 1, ¶¶ 71, 90.)

14

Although Plaintiff styled his conversion claim as against Defendants Palacios, Rivas, and APRR, the Court finds that, taking Plaintiff's allegations as true, Plaintiff has adequately alleged that Defendant Palacios played a role in the alleged conversion sufficient to establish liability. *See Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 318–19 (S.D.N.Y. 2014) (noting, *inter alia*, that "Plaintiffs who bring conversion claims against multiple defendants" must "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants. In other words, they must show that each individual defendant played some role in the conversion"); *see also DeVito*, 548 F. Supp. 3d at 318.

Based on the allegations described above, the Court recommends finding, in addition to the fraud claim, that Defendant Palacios is liable for Plaintiff's claim of conversion, given his alleged role in failing to use Plaintiff's $200,000 to purchase the Yonkers Property. *See Bricklayers Ins. & Welfare Fund*, 2021 WL 7208994, at *5.

### c.  *Breach of Fiduciary Duty*

Plaintiff's breach of fiduciary duty claim is similarly styled as to both Defendants Palacios and Cooper, for their respective conduct in procuring Plaintiff's $200,000. (*See* Compl., ECF No. 1, ¶¶ 95–103.) However, Plaintiff does not assert that he is entitled "to different or greater relief" for this claim as compared to his claims of fraud and conversion. *Benjamin Off. Supply & Servs. Inc. v. 2 Crystals Inc.*, No. 20-CV-3693 (JS) (ST), 2021 WL 4813229, at *10 (E.D.N.Y. Aug. 10, 2021), *report and recommendation adopted*, No. 20-CV-3693 (JS) (ST), 2021 WL 4129165 (E.D.N.Y. Sept. 10, 2021). Accordingly, this Court recommends dismissing Plaintiff's breach of fiduciary duty claim without prejudice to filing a renewed motion for default judgment demonstrating that this claim is not duplicative of the fraud and conversion claims. *See id.* ("Courts frequently dismiss duplicative claims that arise from the same facts and seek the same relief as another

claim."); *see also Hartford Fire Ins. Co. v. Jainulabdeen*, No. 06-CV-2171 (ENV) (KAM), 2007 WL 1028930, at *5 (E.D.N.Y. Mar. 30, 2007) ("[T]he court need not determine whether [the parties'] relationship . . . was such as to rise to the level of a fiduciary duty, because plaintiff's fraud and conversion causes of action sufficiently establish plaintiff's right to [relief].").[7]

### d.  *Unjust Enrichment*

Plaintiff's next cause of action is for unjust enrichment. (Compl., ECF No. 1, ¶¶ 104–09.) Plaintiff alleges that "Defendant Palacios obtained $200,000.00 from Plaintiff and took that money for his own use rather than purchas[ing] the Yonkers Property for the entity ASAPPP, in which Plaintiff holds an ownership interest." (*Id.* ¶ 105.) However, "[a]n unjust enrichment claim is not available [under New York law] where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 432320, at *7 (E.D.N.Y. Jan. 19, 2022) ("[U]njust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a plaintiff only in those circumstances where she has no other recourse in tort or contract."), *report and recommendation adopted in relevant part*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022).

In this case, Plaintiff alleges that Defendant Palacios was unjustly enriched at Plaintiff's expense, but does so "based on the same transactions as [his] claims for common law fraud [and conversion], and thus these claims duplicate th[ose] claims."

---

[7] In any event, the Court notes that Plaintiff has likely failed to establish the existence of a fiduciary relationship between himself and Defendant Palacios. *See, e.g., N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 101–05 (S.D.N.Y. 2013) (setting forth the relevant standards for a breach of fiduciary duty claim and explaining, *inter alia*, that courts normally do not recognize fiduciary duties "where parties deal at arm's length in conventional business transactions").

*Armengol*, 2022 WL 432320, at \*7. (*Compare* Compl., ECF No. 1, ¶¶ 82–87, *with id.* ¶¶ 105–08.) Therefore, Plaintiff is not entitled to a judgment on his claim for unjust enrichment. *Armengol*, 2022 WL 432320, at \*7 (citing, *inter alia*, *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018)); *see also Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642 (KMK), 2022 WL 902107, at \*6 (S.D.N.Y. Mar. 28, 2022).

e.  *Constructive Trust*

Plaintiff additionally requests that the Court impose the equitable remedy of a constructive trust. (Compl., ECF No. 1, ¶¶ 110–15.) Here too, Plaintiff's allegations arise out of the same factual allegations as his fraud and conversion claims, and therefore, are duplicative. (*Compare* Compl., ECF No. 1, ¶¶ 82–87, *with id.* ¶¶ 111–15.) Notably, "New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate.'" *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) (alteration in original) (quoting *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905 (N.Y. App. Div. 3d Dep't 1986)); *see also Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 292 (S.D.N.Y. 2019); *Akerson Advert. & Mktg., Inc. v. St. John & Partners Advert. & Pub. Rels., Inc.*, 89 F. Supp. 3d 341, 356 (N.D.N.Y. 2015). Because the Court recommends finding that Plaintiff is entitled to relief on his fraud and conversion claims, "Plaintiff need not seek recourse in equity." *Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC) (SN), 2021 WL 8013769, at \*8 (S.D.N.Y. Nov. 24, 2021), *report and recommendation adopted*, No. 16-CV-3345 (VEC) (SN), 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022). Accordingly, the Court recommends not imposing a constructive trust.

f.  *Violations of New York General Business Law § 349*

Finally, Plaintiff alleges that Defendant Palacios knowingly and willfully engaged in "deceptive acts and practices in the conduct of [his] business, trade and commerce

17

within the meaning of N.Y. Gen. Bus. Law § 349." (Compl., ECF No. 1, ¶¶ 116, 120, 122.) Specifically, Plaintiff claims that Defendant Palacios is "engaged in the business of real estate investing" and holds himself out "to be in the business of real estate investing," and that "Plaintiff relied on [his] deception to his detriment," resulting in at least $200,000 in damages. (*Id.* ¶¶ 117–18, 121, 123–25.)

Section 349 of the General Business Law "provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service.'" *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 278 (E.D.N.Y. 2021) (quoting N.Y. Gen. Bus. Law § 349(a), (h)). "'To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Id.* (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). To satisfy the first prong of showing that the allegedly deceptive acts were "consumer-oriented," a plaintiff must show "that they "had 'a broader impact on consumers at large': 'Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute . . . .'" *Crawford*, 758 F.3d at 490 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

As a threshold matter, Plaintiff has failed to allege facts that demonstrate that Defendant Palacios's allegedly deceptive "acts or practices have a broader impact on consumers at large," as opposed to just Plaintiff and the network of associates who engaged in real estate ventures with Defendant Palacios. *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 25; *see also Williams v. Bayview Loan Servicing, LLC*, No. 14-CV-7427 (KAM) (LB), 2016 WL 8711209, at *10 (E.D.N.Y. Jan. 22, 2016) (dismissing § 349

claim where plaintiffs "failed to allege any injury to the public generally" (quotation marks omitted)); *Yang Ming Marine Transp. Corp. v. JAC Shipping, Inc.*, No. 20-CV-1118 (FB) (RER), 2021 WL 7908014, at *6 (E.D.N.Y. Jan. 7, 2021) (recommending denial of plaintiff's § 349 claim where plaintiff complained "of actions that are limited to it and defendants" and there were "no allegations that any conduct was directed at the consuming public at large").

Given that Plaintiff does not allege facts beyond claiming that Defendant Palacios is engaged in the business of real estate investing, the Court respectfully recommends denying liability as to Plaintiff's § 349 claim. (*See* Compl., ECF No. 1, ¶¶ 117–18.)

## C. Damages

Having found that Defendant Palacios's default constitutes an admission of liability with respect to Plaintiff's claims of fraud and conversion, and that entry of default judgment is appropriate, the Court now must determine the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "is not considered an admission of damages"). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). As discussed above, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.,* 2020 WL 5519200, at *3. Courts have discretion under Federal Rule of Civil Procedure 55(b)(2) to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). In addition, the moving party is entitled to all

reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Here, Plaintiff seeks $200,000 in damages for the money he provided to purchase the Yonkers Property, $24,654.50 in attorneys' fees for 71.4 billable hours, and $1,064.80 in costs. (*See* Decl. in Supp., ECF No. 22, ¶¶ 10, 12–13, 19–20; Pl.'s Proposed Default J., ECF No. 22-1; *see also* Compl., ECF No. 1, ¶¶ 87, 103, Prayer for Relief.) In addition, Plaintiff requests punitive damages, treble damages, and "interest." (Decl. in Supp., ECF No. 22, ¶ 13; Pl.'s Proposed Default J., ECF No. 22-1.)

1. <u>Damages on Common Law Claims</u>

"[U]nder New York's longstanding out-of-pocket rule, damages for fraud are to be calculated to compensate plaintiffs for what they lost because of the fraud . . . ." *Matana v. Merkin*, 989 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (quotation marks omitted); *see also Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826 (JS) (AKT), 2018 WL 1767873, at *17 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, No. 14-CV-4826 (JS) (AKT), 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018); *Power Up Lending Grp., Ltd. v. N. Am. Custom Specialty Vehicles, Inc.*, No. 16-CV-1025 (ADS) (AYS), 2017 WL 3475504, at *4 (E.D.N.Y. July 26, 2017) ("[T]he default remedy for fraud in New York is an award of compensatory damages."), *report and recommendation adopted*, No. 16-CV-1025 (ADS) (AYS), 2017 WL 3475054 (E.D.N.Y. Aug. 11, 2017). Having reviewed counsel's declaration in support of Plaintiff's default motion and the copy of Plaintiff's check provided to the Court, the Court finds the record sufficient to reasonably determine an award of $200,000 in compensatory damages for Plaintiff's fraud claim. (*See* Decl., ECF No. 22, ¶¶ 10, 19; Check Copy, ECF Nos. 1-19 and 15.)

In addition, although "[p]unitive damages are permitted under New York law for torts such as breach of fiduciary duty, fraud, and conversion," the Court finds that

Plaintiff has failed to assert facts warranting such an award here. *Dorn v. Berson*, No. 09-CV-2717 (ADS) (AKT), 2012 WL 1004907, at *6 (E.D.N.Y. Mar. 1, 2012), *report and recommendation adopted*, No. 09-CV-2717 (ADS) (AKT), 2012 WL 1004905 (E.D.N.Y. Mar. 23, 2012). "Such damages are only available . . . in cases involving gross, wanton, or willful fraud or other morally culpable conduct." *Id.* (quotation marks omitted). Additionally, "where, as here, the tort claims arise out of a contractual relationship between the parties, Plaintiff must demonstrate that the conduct was aimed at the public generally." *Id.*; *see also Newman v. Mor*, No. 08-CV-658 (RJD) (CLP), 2009 WL 890552, at *8 (E.D.N.Y. Mar. 31, 2009) ("New York law is clear in requiring a showing that defendant's conduct be aimed at the public generally. . . ."). Plaintiff does not allege facts showing that Defendant Palacios was engaged "in a larger scheme to defraud the public," and has therefore "failed to allege an element required for the assessment of punitive damages." *Newman*, 2009 WL 890552, at *8; *see also Dorn*, 2012 WL 1004907, at *7 ("[T]he fact that there may be one or two other similar private transactions does not necessarily mean that the conduct was directed at the public."); *Marini v. Adamo*, 812 F. Supp. 2d 243, 271 (E.D.N.Y. 2011).[8]

Lastly, although the Court recommends finding an additional alternative basis for liability with respect to Plaintiff's conversion claim, Plaintiff is only entitled to a single recovery of $200,000. *See Benjamin Off. Supply & Servs. Inc.*, 2021 WL 4813229, at *10 ("As a general rule, 'where a plaintiff seeks recovery for the same damages under different

---

[8] The Court notes that Plaintiff's original request for treble damages arose out of Plaintiff's RICO and N.Y. Gen. Bus. L. § 349 claims. (*See* Compl., ECF No. 1, ¶¶ 79, 125, Prayer for Relief.) Because Plaintiff seeks to dismiss the RICO claim and the Court recommends denial of his § 349 claim, the imposition of treble damages is not warranted.

legal theories, only a single recovery is allowed.'" (quoting *Seifts*, 61 F. Supp. 3d at 326)); *cf. Armengol*, 2022 WL 432320, at *10.

The Court therefore recommends that Plaintiff be awarded $200,000 in compensatory damages.

2. Costs and Attorneys' Fees

As for Plaintiff's request to recover of costs, fees, and expenses, there does not appear to be any legal basis for shifting fees in this case, nor has Plaintiff submitted any evidence demonstrating the costs, fees, or expenses incurred in connection with this suit. (*See* Decl. in Supp., ECF No. 22, ¶¶ 12–13, 20; Pl.'s Proposed Default J., ECF No. 22-1; *see also* Compl., ECF No. 1, Prayer for Relief); Apr. 28, 2022 ECF Order (granting Plaintiff until May 6, 2022 to "submit documentation supporting the costs and fees requested, as well as an any additional authority in support of such claims").) Accordingly, the Court respectfully recommends denying Plaintiff's request for $24,654.50 in attorneys' fees and $1,064.80 in costs. *See Newman*, 2009 WL 890552, at *8 ("Since it is unclear on what basis plaintiff believes he is entitled to reimbursement from defendants, this Court respectfully recommends that the request for reimbursement of attorneys' fees be denied."); *see also Davis v. Davis*, No. 16-CV-6667 (JPO), 2018 WL 4062668, at *4 (S.D.N.Y. Aug. 27, 2018).

However, given that Plaintiffs "are entitled to costs other than attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure," the Court takes judicial notice of the $402 filing fee reflected on the docket, and recommends awarding Plaintiff that amount in costs. *Murphy v. Snyder*, No. 10-CV-1513 (JS) (GRB), 2012 WL 4483025, at *5 (E.D.N.Y. Mar. 28, 2012); *see also Harbus v. Lead Clearance Inc.*, No. 20-CV-1915 (KAM), 2022 WL 604062, at *6 (E.D.N.Y. Mar. 1, 2022) ("[F]iling fees are recoverable without supporting documentation if verified by the docket." (alterations in original));

22

*D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at \*8 (E.D.N.Y. Sept. 10, 2015) (denying costs other than filing fee absent submission of documentation in support).

   3. Prejudgment Interest

   "In New York, prevailing plaintiffs in common law fraud actions are entitled to prejudgment interest as a matter of right." *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423 (JBW) (CLP), 2016 WL 1156769, at \*14 (E.D.N.Y. Feb. 11, 2016) (citing *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 694–95 (2d Cir. 1983)), *report and recommendation adopted*, No. 12-CV-2423 (JBW) (CLP), 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016). Under New York law, prejudgment interest accrues at a rate of nine percent per annum and is calculated "from the earliest ascertainable date the cause of action existed" through the date of "verdict, report or decision." N.Y. C.P.L.R. § 5001(b)–(c); *id.* § 5004.

   Although Plaintiff does not propose a specific start date for the accrual of prejudgment interest in this case, Plaintiff's complaint alleges that he provided the $200,000 to Defendant Palacios on or about March 23, 2019. (Compl., ECF No. 1, ¶ 31; *see also* Check Copy, ECF Nos. 1-19 and 15.) Accordingly, this Court, in its discretion, recommends that prejudgment interest be calculated from March 23, 2019, the approximate date marking the onset of Plaintiff's cause of action for common law fraud, through the date of entry of final judgment, and that it be calculated at the rate of nine percent per annum on the recommended compensatory damages award ($200,000). *See Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH) (RLM), 2020 WL 9814102, at \*12 (E.D.N.Y. Sept. 17, 2020); *Dorn*, 2012 WL 1004907, at \*8.

   4. Post-Judgment Interest

   Post-judgment interest is mandatory and governed by federal statute. *See* 28 U.S.C. § 1961(a); *Plaza Motors of Brooklyn, Inc.*, 2020 WL 9814102, at \*12. Therefore, the

Court respectfully recommends that Plaintiff be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), and calculated from the date the Clerk of the Court enters judgment in this action until the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's revised motion for default judgment (ECF No. 22) be granted in part and denied in part. More specifically, this Court recommends:

(1) dismissing without prejudice Plaintiff's RICO claim as to all Defendants;

(2) dismissing without prejudice Plaintiff's state and common law claims as to Defendants Rivas and APRR;

(3) exercising supplemental jurisdiction over Plaintiff's six remaining state and common law claims as to Defendant Palacios, pursuant to 28 U.S.C. § 1367;

(4) granting Plaintiff's motion for default judgment with respect to Defendant Palacios;

(5) finding Defendant Palacios liable for Plaintiff's claims of common law fraud and common law conversion; dismissing without prejudice Plaintiff's claim based on a breach of fiduciary duty; and denying Plaintiff's claims for damages based on theories of unjust enrichment, constructive trust, and violations of New York General Business Law § 349;

(6) awarding Plaintiff $200,000 in compensatory damages;

(7) denying Plaintiff's request for attorneys' fees and costs, but awarding the $402 filing fee reflected on the docket;

(8) awarding Plaintiff prejudgment interest at nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001(b)–(c) and 5004, to be calculated from March 23, 2019, through the date of judgment; and

(9) awarding Plaintiff post-judgment interest at the rate set forth in 28 U.S.C.

§ 1961(a), to be calculated from the date judgment is entered until the date of

payment.

\* \* \* \* \*

Plaintiff is directed to serve a copy of this report and recommendation on

Defendant Palacios by **May 26, 2022**, and to file proof of service with the Court. In

addition, any objections to this report and recommendation must be filed within

fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P.

6(a), (e) (providing the method for computing time). Failure to file objections within the

specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v.

Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely

to a . . . report [and recommendation] operates as a waiver of any further judicial review

of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
        May 20, 2022

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

25